UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
NUNO NOGUEIRA BOTAS,

Petitioner,

v.

RAUL MALDONADO,
in his official capacity as Warden
Brooklyn Metropolitan Detention
Center, *et al*.

Respondents.

--------------------------------------------------x

**MEMORANDUM & ORDER**
Civil Action No.
26-5991 (GRB)

**GARY R. BROWN, United States District Judge:**

Petitioner Nuno Nogueira Botas, a Portuguese citizen, challenges his arrest and detention by ICE. Petitioner legally entered the United States pursuant to the non-immigrant Visa Waiver Program (VWP). He remained in the country beyond the authorized period, which is unlawful, though not criminal. Petitioner may be subject to removal, but that question is not before this Court. Rather, the limited question examined here is whether his arrest by ICE agents was carried out consistent with the law. Because respondents arrested Botas using a warrant based on false information, ignoring legal safeguards and procedures, the writ must be granted.

**Facts**

Petitioner is a Portuguese national, who lawfully entered the United States on May 7, 2016, pursuant to the VWP. Docket Entry ("DE") 10-3 at 2. His authorization to remain in the United States ended on August 4, 2016. *Id.* On June 20, 2018, the petitioner was married; divorce proceedings were commenced by his spouse in 2023. DE 9 at 5. During those proceedings, petitioner was ordered to turn over possession of

a car to his spouse. *Id.* In July 2026, Plaintiff's failure to comply with that court order resulted in his arrest and incarceration for civil contempt by Order of the Supreme Court of the State of New York, Nassau County. This incarceration lasted less than a month, ending on August 25, 2026. DE 9 at 15.

These legal difficulties apparently brought the petitioner to the attention of immigration authorities. On July 31, 2026, Tony Petito, an ICE deportation officer, digitally executed a warrant of deportation—purportedly on behalf of respondent Kenneth Genalo—for petitioner. DE 10-2. The warrant expressly states that Botas "is subject to removal/deportation from the United States, based upon a final order by . . . a designated official." *Id.* At that time, there was no such final order.

On August 4, 2026, Officer Petito executed a "Notice of Intent to Issue a Final Administrative Removal Order" ("NOI"). DE 10-2 at 9. By its terms, the NOI provides the recipient with a 48-hour period to contest the factual allegations set forth in the NOI, contest removability, and/or apply for asylum. *Id.* The period can be extended to allow the recipient "to rebut the charges . . . , to obtain supporting evidence, or to consult an attorney." *Id.* These periods are important because, as indicated in the NOI, the recipient "do[es] not have any administrative appeal rights once the removal order has been issued by the deciding official." *Id.*

The provisions of that NOI render the next fact peculiarly curious. On August 4, 2025—the same date that the NOI was signed (but not served)—a document purporting to be a "Final Administrative Removal Order" ("FARO") was digitally signed by respondent Genalo. DE 10-2 at 11. On the same day—August 4—U.S.C.I.S. issued an

unsigned "Notice to Alien Ordered Removed/Departure Verification" barring the petitioner's return to the United States for a period of ten years "as a consequence of your having been ordered removed by a designated official." DE 10-2 at 12.

According to a sworn statement by ICE Deportation Officer Henry Tsang, on August 25, 2026, his unit was advised that petitioner was scheduled to be released from the Nassau County Correctional Center. DE 10-2 at 2. Tsang and two other ICE officers "encountered" petitioner after his release from custody and immediately placed him under arrest. *Id.* They then served upon him (1) the July 31 administrative warrant of deportation, (2) the Notice of Intent to Issue a Final Administrative Removal Order dated August 4, (3) the Final Administrative Removal Order dated August 4, and (4) the Administrative Exclusion Order dated August 4, all as a *fait accompli*, along with several other documents. *Id.* at 3. On September 2, 2026, another officer served him with the same Final Administrative Removal Order dated August 4. DE 10-3.

On September 25, 2026, petitioner filed a writ of habeas corpus challenging his arrest and detention—expressly disavowing any challenge to his potential removal. DE 1. The petition was fully briefed on November 2. This opinion follows.

***Discussion***

This Court has had occasion to thoroughly examine the "carefully proscribed" and "extremely limited" authority of ICE agents to effect civil arrests pursuant to an administrative warrant without judicial approval. *See, e.g.*, *Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 332 (E.D.N.Y. 2026).; *cf. Almonte v. Genalo*, No. CV 26-3633 (GRB), 2026 WL

2983349, at *1 (E.D.N.Y. Oct. 5, 2026) ("Trying to legitimize petitioner's arrest, ICE issued a post-hoc sworn administrative warrant containing false information and later issued a Notice to Appear.") Those discussions are hereby incorporated by reference. These examinations —as well as the adjudication of certain abuses of the regulatory and statutory authority accorded to ICE agents—resulted in an injunction codifying ICE's commitment that "its officers will make no arrests in the Eastern District of New York absent securing in advance a valid administrative or judicial warrant (except where the 'escape' provisions of 8 C.F.R. § 287.8(c)(2)(ii) are satisfied.)" *Alfaro v. Mullin,* No. CV 26-0766 (GRB), 2026 WL 1382985, at *3 (E.D.N.Y. May 18, 2026).

It is beyond dispute that the administrative warrant—here a Warrant of Removal/Deportation known as a Form I-205—is expressly conditioned upon the existence of a FARO. It is equally undisputed that no such order existed at the time the warrant issued and that the representation in the warrant to the contrary is simply false. The authority to issue such a warrant emanates from 8 C.F.R. §241.32, which provides that its issuance shall be "based upon the final administrative order of deportation," and the regulations further permit "an alien [to be] taken into custody pursuant to the warrant of removal." 8 C.F.R. § 241.3. The Government here acknowledges that it has no other basis to arrest and detain petitioner. DE 12 at 3.

Because the arrest warrant, predicated on false information, is facially invalid, the agents were not authorized to arrest petitioner, and his arrest and detention are thus illegal. Judge Chen granted a habeas writ in circumstances highly similar to these. *Noteno Guanuna, v. Maldonado*, No. 26-CV-5194 (PKC), 2026 WL 3152056, at *6–8

(E.D.N.Y. Oct. 21, 2026) ("pursuant to the federal government's own regulations and the case law, at the time the Form I-205 Warrant was issued, there was *no* final order of removal to serve as the predicate for the Form I-205 Warrant issued for Petitioner's arrest and detention. . . . By arresting Petitioner without a valid warrant, Respondents violated Petitioner's due process rights.") (emphasis in original); *see also Mathews v. Eldridge*, 424 U.S. 319 (1976).

Numerous other courts have held that where ICE officers detain a petitioner based upon an invalid warrant, the writ should be granted and the petitioner released. *Kurt D. v. Blanche,* No. 26-CV-3320 (JWB)(DJF), 2026 WL 2794179, at *3 (D. Minn. Aug. 7, 2026) (ordering granting of writ and noting that "[h]ere, it is clear the I-200 Warrant was based on a falsehood, namely, that immigration officials had executed a charging document to initiate removal proceedings against [the petitioner], when no such document had been issued at that time. For these reasons, the I-200 Warrant used to arrest [the petitioner] was invalid."); *Alex N. v. Blanche*, No. 26-CV-3088 (LMP)(DTS), 2026 WL 2427834, at *1 (D. Minn. Aug. 12, 2026) ("Because Petitioner's arrest was pursuant to an invalid warrant and therefore unlawful, immediate release is the appropriate remedy.") (internal quotation marks omitted), *adopted by*, No. 26-CV-3088 (LMP)(DTS), 2026 WL 2434741 (D. Minn. Aug. 19, 2026); *cf. United States v. Nosovitch*, No. 23-CR-274 (JMD)(JSD), 2025 WL 3902335, at *7 (E.D. Mo. Oct. 3, 2025) ("A detention as the result of a facially invalid indictment is equivalent to any unfounded judicial determination of probable cause.") (collecting cases), *adopted by*, No. 23-CR-00274-JMD-1, 2025 WL 3687340 (E.D. Mo. Dec. 19, 2025).

Respondents argue that though the FARO did not exist when the warrant was issued, the FARO was in place by the time of petitioner's arrest. DE 12 at 3. But there is no denying that at the time Officer Petito issued the Warrant of Deportation, the required foundation for that order—the existence of a Final Order of Deportation—simply did not exist. That defect renders the warrant false and the ensuing arrest unlawful. *Noteno Guanuna,* 2026 WL 3152056, at *6. The requirements imposed upon ICE to arrest and detain individuals in these civil proceedings are minimal, and the law must require adherence to those basic requisites. *P.A.G.C. v. Genalo,* No. 26-CV-6545 (RER), 2026 WL 3216694, at *12 (E.D.N.Y. Oct. 27, 2026) ("Deterrence is especially warranted in these circumstances.").[1]

Petitioner's counsel raises the issue of whether the arrest violated this Court's injunction in *Sanchez Alfaro*, which requires that ICE officers hold a valid administrative warrant before effecting an arrest in this district. However, there is nothing on this

---

[1] Another potential problem with respondents' argument is the assumption that "at the time the arrest was executed on August 25, 2026, a *valid* FARO was in place." DE 12 at 3 (emphasis added). The facts here appear to undermine that assumption. The simultaneous issuance of the NOI—a document intended to provide petitioner with a reasonable period to investigate and potentially challenge the removal allegations—together with the Final Decision and the Exclusion Order cast doubt on the validity of the FARO. As set forth in the Notice of Intent, ICE policies require a minimum 48-hour period after service of the Notice of Intent—along with other requirements—before a FARO may issue. *See* "ICE Policy Number 11070.1: Visa Waiver Program Removals." Notably, this is not the only case in which ICE nevertheless served these documents concurrently. *See, e.g.*, *Chery v. Maldonado*, No. 26-CV-4667 (PKC), 2026 WL 2566434, at *1 (E.D.N.Y. Aug. 31, 2026). Ultimately, as the arrest was plainly unlawful, the Court need not reach this issue.

record that suggests Officer Tsang, who made the arrest, was aware that the warrant was invalid. Therefore, the Court need not make such a determination at this juncture.[2]

***Conclusion***

The writ of habeas corpus is hereby granted. The petitioner shall be released from custody forthwith.

Dated: November 4, 2026
Central Islip, New York

SO ORDERED.

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge

---

2 It remains a serious concern that Officer Petito—a frequent witness in similar cases—would issue an I-205 warrant bearing apparent misrepresentations. Counsel for respondents, along with agency counsel, should further investigate that problem.